Pearsou, J.
 

 The defendant, Tathem, purchased of the defendant, Yannoy, the “pre-emption right,” at the price often dollars, and the further consideration, that Yannoy should he allowed the full benefit of all mineral interest in the land, and to secure the enjoyment thereof, Tathem executed to Yannoy a penal bond. Tatliein paid to the State the amount at which the land was valued, and in the words of the bill, “ the said land was duly, and legally granted, in fee simple, to him.” Tathem avers that lie is a purchaser without notice of any equity on the part of the plaintiffs.
 

 
 *291
 
 After Tatliem obtained tlie grant, Yannoy sold all bis interest in the minerals, to the defendant Woodiin, for the sum of four hundred dollars, and he associated with him the other defendants, Woodfin and McDowell, and they aver that they are purchasers -without notice of any equity on tlie part of the plaintiffs. The plaindffs, have not by their proofs, affected those defendants with notice, and as to them, tlie case fails ; so the question is, as to the defendant Yannoy. In 183-8, Yannoy, the plaintiff Rhea, and Garland, the assignee of the plaintiffs Thomas, and McKay, the ancestor of the other plaintiffs, entered into a written agreement, under seal, in regard to certain tracts of land bid. off at the land sale in Cherokee, among others, No. 41, district I, (the subject of this controversy.) According to this agreement, the partners were to own the land as ■ copartners; pay for it equally, and share equally in. all profits arising from mining operations or agricultural pursuits or other use or disposition of the land ; such disposition was to be made of the property, “ as a majority of them might deem advisable.” One-eighth of the price ivas paid in cash, and the balance secured by note, and sureties as required by Statute.
 

 In 1845, all the plaintiffs being absent from the State, (as tlie bill alleges,) “engaged in private business,” Yannoy surrendered tlie land to tlie State, according to the provisions-of the act of 1844, “ entitled an act, more effectually to secure the debts due for Cherokee lands, and to facilitate the collection of the same,” the securities given for the balance of the purchase money, (upon which judgments had been taken) were cancelled, and the judgments discharged.
 

 In 1847, the plaintiffs being still absent from the State, Yannoy applied lor and obtained a certificate of tlie preemption right, allowed to purchasers wlio bad surrendered. — ■ He took the certificate in his own name alone, and afterwards sold it to Tatliem, reserving the mineral interest, which he afterwards sold to Woodfin, as stated above.
 

 
 *292
 
 The plaintiffs insist that Yannoy had no right to make a surrender ; that he did so in fraud of their rights, and with a view to his own benefit, and is bound to account and pay over to them equal shares of the sums realised by him, for and on account of the pre-emption right, to which, as they allege, they -were equally entitled ; that is, $400 by the sale, and other large- sums by working- a rich gold mine, before he sold the mineral interest.
 

 They insist further, that if Yannoy had a right to make the surrender in their absence, and cannot be made liable on the ground of fraud, still as they were copartners and joint purchasers, they were under the 2d section of the act of 1846, entitled as purchasers to a joint interest in the “ pre-emption right,” and the defendant, although he took the certificate in his own name, will in equity, be deemed a trustee, so as to let them in for equal shares of the profit derived from the “pre-emption right.” *
 

 Yannoy in his answer, avers that the bonds for the balance of the purchase money, were executed by him and McKay alone as principals, with one Piercy and Carson, as their sureties ; that McKay became insolvent, ran away, and went to parts unknown, and the writs, issued upon the bonds against himself and McKay, and the two sureties, were returned
 
 non est inventáis,
 
 as to McKay, and the judgments were taken against himself and the sureties; that the plaintiff, Rhea, was also insolvent and had left the country; that Garland resided in the county of Yancey, and paid no attention to the business'; that his alleged assignee, the plaintiff Thomas, resided in the county of Haywood, and was at the time, absent from State; that neither Rhea, Garland or Thomas offered to assist him, in any way, either by furnishing credit or funds, and thus he was deserted and left unsupported, and alone, to do the best he could in the premises; that he, himself, became insolvent, and although he wished to hold on to the land, yet
 
 *293
 
 Re -was compelled to take the benefit of the act of 1844, which allows the land to be surrendered when the commissioners certify that the
 
 principals
 
 in the bonds are insolvent; that accordingly the commissioners did duly certify, (and according to the truth) that he and McKay, (the principals in the bonds) were insolvent; that the land was thereupon surrendered and the bonds and judgments thereon discharged, and considered to be released and satisfied, and that in making the surrender, he acted under compulsion and without fraud; that being the only way in which he could relieve the sureties which in conscience, he felt bound to do.
 

 The answer further avers, that afterwards, upon the passage of the act of 1846, the defendant, Yannoy, became entitled under the 2d section, to the “ pre-emption right,” as a purchaser who had surrendered, and who was an
 
 achual settler
 
 on the land; thaffneither McKay or his hems,, or Rhea, or Gar-, land or his alleged assignee Thomas, were in any way interested or entitled to participate in such pre-emption right, for-they were all expressly excluded by the Yth section, which-provides, “the pre-emption right granted by the 2d section of this act shall not extend to any person or persons, who are not actual settlers on the land, who do not design to become permanent residents of the county;” upon looking into the proofs, we are satisfied that McKay and'Yannoy, alone exe- . cuted the bonds as principals. That McKay became insolvent and left the State. Yannoy, also became insolvent and
 
 judgments were taken against him and his sureties. There is no
 
 evidence that either of the plaintiffs offered to assist in any way by credit or cash, and consequently Yannoy was compelled, in order to relieve his sureties, to make the sur-, render. So the charge is wholly unsupported; in fact, Yan-. noy could not have made the surrender with a view’to his! own benefit, for he did so
 
 before
 
 the passage of the act, which! confers the “pre-emption right, on purchasers who had sur
 
 *294
 
 rendered, being actual settlers or persons desirous of becom* ing permanent residents of the county.”
 

 The charge of fraud, certainly comes with an ill grace from •the plaintiffs who deserted their partner and left him to get out of the difficulty in the best way he could. The first ground, on which the plaintiffs place their equity, fails.
 

 The second ground, depends upon whether the plaintiffs or ■either of them, were entitled, under the act of 1846, to a participation in the pre-emption right as purchasers, who had surrendered, for if they had such an interest, they have an equity by which to hold Yannoy as a trustee, and
 
 to
 
 consider him as having obtained the pre-emption right, as well for their benefit as his own, by reason of their former connection as partners, and to hold him to an account for such profits as he may have realised therefrom. This equity, we think clear, from analogy to the well settled doctrine in regard to the renewal of leasehold estates. “ If a trustee or executor, hold ing renewable leaseholds, renew in his own name, he cannot hold for himself, even though a renewal of the former trusts may have been refused by the lessor; the same result will follo w by a mortgagee or
 
 partner,
 
 or by a tenant for life; for although he may not be bound to renew, yet if he does renew
 
 'behind the bach of the other parties
 
 interested, he cannot, by converting the new acquisition to his own use, derive an un. conscientious benefit out of the estate on which it is a graft,” Adams’ Eq. 60. So the question is, were the plaintiffs as purchasers, who had surrendered, interested and entitled to participate imthe
 
 “
 
 pre-emption right
 
 V’
 
 The Ith section expressly excludes all who are not actual settlers on the land or desirous of becoming permanent residents of the county. McKay is •out of the question, and there is no allegation, in the bill by which to bring either Rhea, Garland or Thomas within th« ■requirement of the act; so, the field was open to Yannoy, •and there was no reason why he could not, with a good conscience, avail himself of a benefit, which the act conferred, and •which was preserved to .him on- account of his residence.
 

 Bill dismissed with cosía.